| | |
|---|---|
| LEROY L. SEMIEN | CIVIL ACTION NO. 08-0162 |
| VS. | SECTION P |
| WARDEN | JUDGE DOHERTY |
| | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Louisiana prisoner Leroy L. Semien filed this *pro se* petition for writ of *habeas corpus* (28 U.S.C. §2254) on February 4, 2008. Semien attacks his October 2005 conviction for distribution of cocaine and the twelve year sentence imposed following that conviction in the Twenty-Seventh Judicial District Court, St. Landry Parish. This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636. For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE.**

### *Background*

On March 24, 2004 petitioner was charged with one count of distribution of cocaine. [doc. 1-3, p. 13] His trial commenced on October 11, 2005. [doc. 1-4, p. 17] On October 13, 2005 he was found guilty as charged. [doc. 1-3, pp. 40-42; doc. 1-4, pp. 18-20] On January 13, 2006 he was sentenced to serve 12 years at hard labor. [doc. 1-4, pp. 21-28] Petitioner's Motion for Reconsideration of Sentence was denied on May 12, 2006 and he timely appealed. His court-appointed appellate counsel raised four assignments of error –

(1) The State did not prove the essential elements of the crime beyond a reasonable doubt as the identity of the defendant was confused with other cases, the officer

making the drug buy did not have a report, there was no photo lineup, and although testimony was there were two rocks bought, only one rock weighing .13 (13 hundredths) of a gram was introduced into evidence.

(2) The trial court erred when it prevented the defense from introducing evidence that the confidential informant had eight prior convictions, and allowed the state to argue the same person was 'reliable' in making cases.

(3) The twelve year sentence imposed on this first offender convicted of distribution of about 1/10th of a gram of crack cocaine was excessive.

(4) The record is defective and impairs the defendant's appeal of right because although the minutes reflect the trial court denied a *Batson* challenge during jury selection, the district court did not include the transcript relevant to that and therefore appellate counsel cannot review, brief or argue that issue. [rec doc. 1-3, pp. 16-17]

Petitioner filed a supplemental *pro se* brief on appeal in which he argued two additional assignments of error:

(1) The trial court violated the defendant's right to a fair trial by an impartial jury when the court was informed that the jury was influenced by an outside influence/communication between a witness of the state and a jury member(s) before the verdict was decided by denying an evidentiary hearing and a Motion for New Trial at a hearing on objection by the state, claiming that a jury member is protected and prevented from testifying under the Louisiana Code of Evidence Art. 606(B) directly in violation of the same and the defendant's U.S.C.A. Const. Amends. 5, 6, 14.

(2) The trial court under the new ruling by the U.S. Supreme Court on June 24, 2004 in *Blakely v. Washington*, 542 U.S. _____ (2004) has sentenced the defendant illegally by using additional facts, other than a conviction not found by a jury nor admitted by the defendant wherein any aggravating factors must be stated for the record and those aggravating factors must be found beyond a reasonable doubt by a jury if used as an element of the sentencing. [rec. doc. 1-4, p. 31]

On January 31, 2007 the Third Circuit Court of Appeals affirmed petitioner's conviction and sentence. *State of Louisiana v. Leroy Semien*, 2006-841 (La. App. 3 Cir. 1/31/2007), 948 So.2d 1189. The majority found that the undercover police officer's in court identification of the petitioner as the perpetrator of the offense provided sufficient of petitioner's identity as the

perpetrator of the offense. *State v. Semien*, 948 So.2d at 1195. The majority likewise found that since the confidential informant did not testify at trial, and no hearsay statements of the confidential informant were admitted into evidence, La. C.E. arts. 609.1 and 806 were inapplicable. The majority also noted that petitioner's right to present a defense was not prejudiced since he was permitted to call witnesses and cross examine the State's witnesses. Finally, the majority noted that the reliability of the confidential informant was not an issue in the trial. *Id.*, at 1196.

With regard to the sentencing claims, the court noted that petitioner's Motion to Reconsider Sentence complained only that the twelve year sentence was "excessively harsh." The court further noted that excessiveness was the sole argument advanced by the petitioner at the hearing on the motion. The court, citing La. C.Cr.P. art. 881.1(E) (which provides, "Failure to ... include a specific ground upon which a motion to reconsider sentence may be based ... shall preclude ... the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review..."), then determined that petitioner's *Blakely* and *Apprendi* claims could not be addressed since they were procedurally defaulted. *Id.* at p. 1197. The court did address the excessiveness of sentence claim and determined that the twelve year sentence was well within the 30-year statutory limit for the offense of distribution of cocaine [see La. R.S.40:967(B)(4)(b)] and was not an abuse of the trial court's discretion. *Id.*, at p. 1198.

The court rejected petitioner's fourth assignment of error as moot by noting that the missing portion of the voir dire transcript[1] had been submitted to the court and provided to appellate counsel. [*Id.*]

---

[1] See rec. doc. 1-4, pp. 1-16.

Finally, the court rejected petitioner's remaining *pro se* claim concerning juror misconduct – alleged conversations between jurors and Deputy Gallow. The court noted that petitioner's trial counsel had originally complained of misconduct involving juror Green and Dy. Gallow; however, counsel, at an evidentiary hearing convened on November 10, 2005, withdrew that claim when Green recanted her original testimony and accused Juror Provost of misconduct. As noted by the court, "In his brief to this court, the Defendant addresses Gallow's conversation with Green, but does not include the actions of Provost in his assigned error. As defense counsel abandoned his original motion regarding Green's contact with Gallow, there was no ruling by the trial court as to that matter, and therefore, this issue is not properly before this court." *Id.*, at p. 1199. The court mailed Notice of Judgment to petitioner and his attorney on January 31, 2007. [rec. doc. 1-3, p. 45]

On March 1, 2007, petitioner's court-appointed appellate attorney mailed an Application for Writs of *Certiorari* to the Louisiana Supreme Court. Therein he argued only the sufficiency of evidence claim which he had previously presented to the Third Circuit. [rec. doc. 1-3, pp. 1-10] On or about March 4, 2007 petitioner submitted a hand-written *pro se* Supplemental brief to the Louisiana Supreme Court. Therein petitioner urged the claims which were raised on appeal but not presented to the Court by his court-appointed attorney. With regard to the claim concerning his inability to "impeach" the credibility of the confidential informant, petitioner argued only violations of Louisiana law citing Louisiana Const. Art. I, §16, the Louisiana Code of Evidence, evidence commentary by Wigmore, Pugh, and others, and Louisiana jurisprudence. [rec. doc. 1-4, p. 46] With respect to his excessiveness of sentence claim, petitioner likewise cited only Louisiana Const. Art. I, §20, La. C.Cr.P. art. 894.1, and Louisiana jurisprudence, namely *State v. Sepulvado*, 367 So.2d 762 (La. 1979), *State v. Smith*, 639 So.2d 237 (La. 1994), *State v. Dorthey*, 623 So.2d 1276 (La. 1993),

and *State v. Tomkins*, 429 So.2d 1385 (La. 1983) and others. Otherwise, petitioner re-urged his *Apprendi v. New Jersey* and *Blakely v. Washington* sentencing claims which had been dismissed as procedurally defaulted by the Third Circuit Court of Appeal. [rec. doc. 1-4, pp. 46-49] With regard to the defective record on appeal claim, petitioner conceded that the claim was moot. [rec. doc. 1-4, p. 48] He presented a brief argument citing the United States Constitution with regard to his claim that the trial court erred when it denied an evidentiary hearing on his claim of juror misconduct, however, he did not address the fact that no hearing was afforded on his original claim on appeal because his trial counsel specifically abandoned that claim prior to the hearing . [rec. doc. 1-4, p. 48] Finally, petitioner raised claims not addressed in either the counseled or *pro se* appeals briefs concerning the validity of the affidavit in support of the warrant for arrest. [rec. doc. 1-4, p. 49-51]

On October 12, 2007, the Louisiana Supreme Court denied writs. *State of Louisiana v. Leroy Semien*, 2007-0448 (La. 10/12/2007), 965 So.2d 397.

Petitioner signed his federal petition on December 10, 2007 [rec. doc. 1, p. 6]; he signed the accompanying cover letter on December 13, 2007. [rec. doc. 1, p. 7] He mailed the pleadings on February 1, 2008 [rec. doc. 1, p. 8] and they were received and filed on February 24, 2008. In the petition which was unaccompanied by a memorandum or brief, petitioner argued four claims for relief: (1) insufficiency of evidence of identity; (2) trial court erred when it prevented the defense from introducing evidence of the confidential informant's prior convictions; (3) excessiveness of sentence; and (4) jury misconduct/tampering. [doc. 1, ¶12 (A), (B), (C), and (D)][2]

---

[2] It is noted that petitioner argued on appeal that his sentence was imposed in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); the Court of Appeals did not address the merits of these claims because they were considered procedurally defaulted since they were not included as specific grounds in the Motion to Reconsider Sentence filed prior to the appeal. As noted by the Court of Appeals, "'Failure to ... include a specific ground upon

The petition was served and on June 30, 2008 the respondent filed an answer and submitted the state court record. [rec. doc. 12] Thereafter, on August 4, 2008, petitioner filed a response to the answer. [rec. doc. 13] During the course of review, the undersigned discovered that a portion of the state court record – a sealed transcript of a hearing on petitioner's motion for new trial – had not been filed along with the state court record. On January 20, 2009, respondent filed a motion to supplement" the record with the missing transcript, and, on February 27, 2009 the transcript was filed as a manual attachment. [rec. docs. 14-15 and Manual Attachment 2/27/2009]

### *Law and Analysis*

### *1. Exhaustion of Available State Court Remedies*

In the order directing service of process, the undersigned observed that Claims 2 (confidential informant) and 3 (excessiveness of sentence) were not properly exhausted since these claims were presented by petitioner in his *pro se* writ application to the Supreme Court as violations of Louisiana and not federal law. The undersigned also observed that the Louisiana Courts did not reach the merits of Claim 4 (juror misconduct/tampering) because petitioner, through his trial attorney, specifically abandoned this claim in the district court.

In its answer, the respondent likewise observed that petitioner's excessiveness of sentence and confidential informant claims were presented to the Louisiana Supreme Court as violations of state and not federal law. Respondent also observed that the Court of Appeals did not address the

---

which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.' La.Code Crim.P. art. 881.1(E). Defense counsel clearly failed to argue that the trial court did not comply with La.Code Crim.P. art. 894.1, or that consideration of the Defendant's prior arrest violated the rulings set out in *Apprendi* and *Blakely*. Accordingly, we find that these issues are not properly before this court and should not be reviewed." *State v. Semien*, 2006-841 (La. App. 3 Cir. 1/31/2007), 948 So.2d at 1196. Neither the instant petition nor the rebuttal brief filed by the petitioner contain any reference to these claims and it thus appears that they have been abandoned. Nevertheless, as is shown below, consideration of the merits of this claim would be inappropriate since this aspect of his sentencing claim was clearly the subject of a procedural default in the State courts.

merits of petitioner's juror misconduct/tampering claim because his attorney had abandoned the claim prior to a post-trial hearing that had been convened in the district court. [rec. doc. 12, p. 4]

Petitioner submitted a response alleging that he did in fact exhaust available state court remedies with regard to claims 2 and 3. [rec. doc. 13, pp. 11 and following] In support of this claim he pointed out that the introductory paragraphs of his *pro se* supplemental writ application to the Louisiana Supreme Court cited *Haines v. Kerner*, 404 U.S. 519 (1972); *Conley v. Gibson*, 355 U.S. 41 (1957); *Burgos v. Hopkins*, 14 F.3d 787, 789 (2nd Cir. 1994); and *Elliot v. Bronson*, 872 F.2d 20, 21-22 (2nd Cir. 1989) for the proposition that *pro se* pleadings should be liberally construed and interpreted to raise the strongest arguments they suggest. [rec. doc. 13, pp. 11-12] With regard to the jury misconduct/tampering claim, he implied that the facts as alleged rendered his trial fundamentally unfair and therefore federal review is appropriate notwithstanding the procedural default. [rec. doc. 13, pp. 12-17]

It appears that petitioner failed to properly and fairly present the federal basis for Claims 2 and 3 (confidential informant; excessiveness of sentence) to the Louisiana courts and therefore those claims probably remain unexhausted; nevertheless, 28 U.S.C. §2254(b)(1)(2) provides, "An application for a writ of *habeas* corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." As is shown hereinafter, Claims 2 and 3 are manifestly without merit and dismissal on that basis will be recommended notwithstanding petitioner's apparent failure to properly exhaust these claims prior to raising them in this pending petition for *habeas corpus.*

## *2. Procedural Default*

As noted, the Third Circuit did not rule on the merits of petitioner's *Apprendi/Blakely*

Sentencing Claims because counsel did not include these claims in his Motion to Reconsider

Sentence.   Further, the court declined to address the merits of Claim 4 (jury  misconduct/

tampering) because it determined that petitioner's attorney abandoned the claim in the trial court.

With regard to the *Apprendi/Blakely* aspect of his sentencing claim, the Court observed:

> Counsel for Defendant filed a Motion to Reconsider Sentence stating the following:
> 'Defendant contends the sentence was excessively harsh.' Additionally, at the
> hearing on the motion, defense counsel merely argued that the Defendant's sentence
> was excessive.  'Failure to ... include a specific ground upon which a motion to
> reconsider sentence may be based, including a claim of excessiveness, shall preclude
> the state or the defendant from raising an objection to the sentence or from urging
> any ground not raised in the motion on appeal or review.' La.Code Crim.P. art.
> 881.1(E). Defense counsel clearly failed to argue that the trial court did not comply
> with La.Code Crim.P. art. 894.1, or that consideration of the Defendant's prior arrest
> violated the rulings set out in *Apprendi* and *Blakely*. Accordingly, we find that these
> issues are not properly before this court and should not be reviewed.

*State v. Semien*, 2006-841 (La. App. 3 Cir. 1/31/2007), 948 So.2d at 1196.

With regard to juror misconduct/tampering claim, the Court of Appeals made the following

observations:

> In his first pro se assignment of error, the Defendant contends the trial court violated
> his right to a fair trial by an impartial jury. Defendant asserts that the trial court was
> informed that the jury was influenced by an outside influence/communication that
> occurred between a witness and a jury member before the verdict was decided.
> However, the court denied an evidentiary hearing and a Motion for a New Trial,
> claiming that a jury member is protected and prevented from testifying under
> La.Code Evid. art. 606(B), directly in violation of the same and the Defendant's
> rights under U.S. Const. Amends. V, VI, and XIV. On October 14, 2005, defense
> counsel informed the trial court that juror Marie Green informed him that Roylis
> Gallow spoke to her about the case. The trial court then requested that defense
> counsel file a formal motion.
>
> On October 14, 2005, the Defendant filed a Motion to Set Aside Verdict Based Upon
> Jury Misconduct/Tampering. Therein, the Defendant alleged that juror Marie Green

advised defense counsel that she and Roylis Gallow discussed the case during a trial recess. During their conversation, Green alleged, Gallow informed her that the Defendant had previously been arrested and was a known drug dealer. Additionally, Gallow allegedly also told Green that the Defendant had 'gotten off' in the past, and thought he would 'get off' again.

A Supplemental Motion to Set Aside Jury Verdict Based Upon Jury Misconduct was filed on October 31, 2005. Therein, the Defendant alleged that Green had recanted her story, but that Green admitted that another juror, Provost, committed jury misconduct by informing other jurors that she had spoken to the Defendant and that his voice was the same as the voice on the audio tape played to the jury.
At a hearing held on November 10, 2005, defense counsel informed the trial court that he had abandoned his original motion.

In his brief to this court, the Defendant addresses Gallow's conversation with Green, but does not include the actions of Provost in his assigned error. <u>As defense counsel abandoned his original motion regarding Green's contact with Gallow, there was no ruling by the trial court as to that matter, and therefore, this issue is not properly before this court</u>. Accordingly, we find this assignment of error lacks merit.

*State of Louisiana v. Leroy Semien*, 2006-841 (La. App. 3 Cir. 1/31/2007), 948 So.2d 1189, 1198-99.

The Uniform Rules of the Louisiana Courts of Appeal, Rule 1-3 provides in part, "The Courts of Appeal will review <u>only issues which were submitted to the trial court</u> and which are contained in specifications or assignments of error, unless the interests of justice clearly require otherwise." While not specifically stated as the grounds for the Court's decision, it is clear that the rule was invoked to deny review of this juror misconduct/tampering claim since the Court of Appeal specifically noted that (1) trial counsel abandoned the claim; (2) therefore, there was no ruling in the trial court; and (3) consequently, the matter was not properly before the Court of Appeal.

Both claims are therefore procedurally defaulted. This is so because the last reasoned decision on these claims clearly and expressly relied on procedural defaults defined by Louisiana law. In the case of the *Apprendi/Blakely* claim, the Third Circuit refused to address the merits of the

claim and instead specifically relied upon petitioner's failure to include the claim in his post-trial motion to reconsider sentence to deny relief; as to his juror misconduct/tampering claim, the Court relied on the fact that the claim was abandoned and never presented to the trial court and thus could not be reviewed on appeal.[3] See *Harris* and *Sones, infra*.

The procedural default doctrine applies to bar federal *habeas corpus* review when a state court declines to address a prisoner's federal claims because the prisoner failed to follow a state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).) Federal courts typically refuse to reach the merits of questions of federal law if the state courts have expressly relied on an "adequate and independent" state procedural ground in refusing to review the claim. "An 'adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997), *cert. denied*, 523 U.S. 1125 (1998), citing *Amos v. Scott*, 61 F .3d 333, 339 (5th Cir. 1995). A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id.*, citing *Lott v. Hargett* 80 F.3d 161, 165 (5th Cir.1996).

---

[3] The supplemental manual attachment confirms the observation of the Third Circuit. The transcript of the November 10, 2005 motion to set aside jury verdict reveals that counsel abandoned his claim of juror misconduct with regard to the alleged conversation between Roylis Gallow and juror Marie Green. [See Manual Attachment – sealed transcript]

According to the transcript, the Court offered the following preamble as the motion was called to trial, "All right. This is in the matter of State of Louisiana versus Leroy Semien, Docket No. 02-k-0162-B. Present before the Court is a Motion filed by Mr. Claiborne and the defendant in connection with, as I understand it, a Supplemental Motion to Set Aside Jury Verdict Based on Defendant's Conduct. Is that correct, Mr. Claiborne." Claiborne, petitioner's trial counsel replied, "Yes, sir. It's the second motion I filed. I abandoned the initial motion, Your Honor. [Manual Attachment 2/27/2009 at p. 005] The remainder of the transcript reveals that the motion was based on petitioner's allegation that he had spoken to a juror, a Ms. Prevost, during a break in the trial and that subsequently, it came to counsel's attention that Ms. Prevost, based on her conversation with petitioner, advised her fellow jurors that the voice on the audio tape introduced as evidence by the state, was in fact petitioner's. [Id., pp. 1-49]

Petitioner herein makes no showing that either La. C.Cr.P. art. 881.1(E) or the Uniform Rules of the Courts of Appeal – specifically Rule 1-3 – are not evenhandedly applied, thus the state court procedural rule must be presumed adequate.

A procedural rule is "independent" when the last state court rendering a judgment in the case "clearly and expressly" indicates that its judgment rests on the procedural ground. *Amos*, 61 F.3d at 338.

The procedural rules identified in this case satisfy both requirements. A review of the Louisiana jurisprudence establishes that the Louisiana courts of appeal regularly invoke La. C.Cr.P. art. 881.1(E) to bar review of sentencing errors raised on appeal but not in a properly filed motion to reconsider sentence.[4] The jurisprudence likewise establishes that the Courts of Appeal routinely rely upon Uniform Rules Rule 1-3 to bar review of claims that were not first presented to the trial court.[5]

---

[4] See *State v. Peloquin*, App. 3 Cir.2004, 888 So.2d 393, 2004-667 (La.App. 3 Cir. 11/17/04), writ denied 898 So.2d 1280, 2004-3170 (La. 4/8/05); *State v. White*, App. 3 Cir.2004, 872 So.2d 588, 2003-1535 (La.App. 3 Cir. 4/28/04); *State v. Richardson*, App. 5 Cir.2001, 790 So.2d 717, 01-239 (La.App. 5 Cir. 6/27/01). *State v. Carter*, App. 4 Cir.2000, 772 So.2d 213, 2000-0200 (La.App. 4 Cir. 10/18/00); *State v. Stec*, App. 5 Cir.1999, 749 So.2d 784, 99- 633 (La.App. 5 Cir. 11/30/99); *State v. Barber*, App. 2 Cir.1998, 706 So.2d 563, 30,019 (La.App. 2 Cir. 1/21/98), writ denied 726 So.2d 24, 1998-1353 (La. 10/9/98); *State v. Washington*, App. 3 Cir.1997, 687 So.2d 575, 1996-656 (La.App. 3 Cir. 1/15/97); *State v. Henton*, App. 2 Cir.1996, 682 So.2d 777, 28,576 (La.App. 2 Cir. 9/25/96), writ denied 692 So.2d 391, 1996-2590 (La. 3/27/97); *State v. Curtis*, App. 3 Cir.2008, 987 So.2d 294, 2008-99 (La.App. 3 Cir. 6/5/08); *State v. Carter*, App. 3 Cir.2008, 981 So.2d 734, 2007-1237 (La.App. 3 Cir. 4/9/08); *State v. Harris*, App. 2 Cir.2008, 980 So.2d 174, 43,069 (La.App. 2 Cir. 3/19/08).

[5] See, for example, *State v. McGinnis*, 2007-1419 (La. App. 3 Cir. 4/30/2008), 981 So. 2d 881, 894 (Court of appeals ruled that issue was not properly before the court where the defendant/appellant failed to assert error in the trial court); *State v. Chapman*, 625 So.2d 1351, 1353 (La. App. 3 Cir. 1993), ("Since it cannot be shown this issue was specified as an error in the trial court, we have no authority to review the alleged error."); *Leach v. Louisiana Parole Board*, 2007-0848 (La. App. 1 Cir. 6/6/08), 991 So.2d 1120, 1125 at fn 6 ("... on appeal, Leach questioned for the first time the Parole Board's denial of his request for appointment of counsel to represent him in connection with the revocation proceedings. Since Leach did not raise this issue in the district court proceeding, he cannot raise this issue on appeal. See Uniform Rules-Courts of Appeal Rule 1-3. Thus, we will not address this issue. See *Geiger v. State ex rel. Dep't of Health and Hosp.*, 01-2206 (La.4/12/02), 815 So.2d 80, 86."); *State v. Alexander*, 2007-1236 (La. App. 3 Cir. 4/9/2008), 980 So.2d 877, 879, ("A review of the record reveals that this issue was not presented to the trial court for consideration and is, therefore, not subject to review by this court. Consequently, Defendant's request that the trial judge be recused will not be considered as said issue was not first presented to the trial court for consideration. Uniform Rules-Courts of Appeal, Rule 1-3."); *State v. Perkins*, 2007-0423 (La. App. 3 Cir. 10/31/2007), 968 So.2d 1178, 1183, ("[Appellant] neither asserted nor argued [entrapment] at trial. A legal argument cannot be made for the first time on appeal. Uniform Rules-Courts of Appeal, Rule 1-3. Therefore, we

Therefore, the undersigned must conclude that both art. 881.1(E) and the Uniform Rules of the Louisiana Courts of Appeal, specifically Rule 1-3, constitute an "adequate" procedural rule to bar federal *habeas corpus* review of petitioner's *Apprendi/Blakely* claim and his juror misconduct/tampering claim. Moreover, because the last reasoned judgment on petitioner's claims, that of the Third Circuit Court of Appeals, specifically declined review based on art. 881.1(E) and trial counsel's abandonment of the claim, the undersigned finds that the identified procedural rules are also "independent."[6]

### 3. Cause and Prejudice or Miscarriage of Justice

Because the *Apprendi/Blakely* aspect of Claim 3 and all of Claim 4 are procedurally defaulted, this court may refuse to review the merits of these claims unless petitioner demonstrates that he should be excused from application of the procedural default doctrine. This he can do by showing cause and prejudice for the default or, by showing that a miscarriage of justice will result from the denial of federal *habeas* review. See *Finley*, 243 F.3d 215, 220-221 (5th Cir. 2001); *Coleman, supra; McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Moore v. Roberts*, 83 F.3d 699 (5th Cir.1996); *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Sones*, 61 F.3d at 416. *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.1996) quoting *McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.

---

decline to consider this assignment of error as it is not properly before this court.")

[6] The Louisiana Supreme Court did not articulate reasons for its denial of writs. However, where there has been a reasoned state court judgment which explicitly rejects the federal claim on state procedural grounds, subsequent unexplained judgments upholding the previous judgment or rejecting the claim are presumed to rely upon the same ground. In other words, when the last reasoned decision on the claim explicitly relied upon a state procedural default, federal courts must presume that later decisions rejecting the claim "did not silently disregard that bar and consider the merits." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

### *Cause and prejudice*

In *Murray v. Carrier*, the Supreme Court explained that "cause" requires an impediment external to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard. *Id.* at 488, 106 S.Ct. at 2645 (internal citations omitted)."

Clearly, the cause of the default, with respect to the jury misconduct/tampering claim, was counsel's conscious decision to abandon the claim of jury misconduct/tampering – a decision apparently made after the person who provided the information which formed the basis of the claim recanted her prior statements. The cause of the default on the sentencing claim was apparently counsel's failure to include the *Apprendi/Blakely* claims in his Motion to Reconsider Sentence. In some circumstances, the ineffective assistance of counsel can constitute cause sufficient to overcome a procedural default. See *Coleman v. Thompson*, 501 U.S. 722, 753-54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). However, the *habeas* petitioner making such a claim with the purpose of having a substantive claim reviewed on its merits must ordinarily have presented the ineffective-assistance-of-counsel claim as an independent claim in state court before attempting to use it as cause to excuse a procedural defect. See *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). Petitioner has not litigated an independent claim of ineffective assistance and therefore he is unable to establish cause for his defaults.

If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir.1992). Nevertheless, in this case, even if it is assumed that petitioner has shown cause for his default, he cannot show prejudice with regard to the jury misconduct/tampering claim because his key witness, Ms. Green, recanted the previous statements she had allegedly made to counsel; nor can he show prejudice with respect to the *Apprendi/Blakely* claims since he cannot show that the Third Circuit would have ruled in his favor even if the claim had been properly presented.

### *Miscarriage of Justice*

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *Glover*, 128 F.3d at 904. To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime of which he was convicted. *Corwin v. Johnson*, 150 F.3d 467, 473 (5 Cir.1998); *Ward v. Cain*, 53 F.3d 106, 108 (5 Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996) quoting *McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993). Petitioner claims that he is not guilty but he has not shown as a factual matter that he is actually innocent of the crime of which he was convicted, and thus he will not suffer a fundamental miscarriage of justice from this court's failure to consider his claims. Accordingly, petitioner cannot avoid procedural default on grounds of actual innocence.

### 4. Merits of the Claims

#### a. Standard of Review

Since this petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA) the standard of review as set forth in 28 U.S.C. § 2254(d) must be applied. *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir.2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000). AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments. *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir.2000) citing *Teague v. Lane*, 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) (noting that AEDPA "placed a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners").

Title 28 U.S.C. § 2254(d) as amended by the AEDPA, provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of § 2254(d) the Court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the decision

"was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief. *Ormon*, 228 F.3d at 619 citing *Williams*, 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and 'correct' error in state court proceedings, but must exercise a more limited review ..." *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D.Md.2000). Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court. *Montoya*, 226 F.3d at 404; *Orman*, 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir.2000) citing *Williams*, 120 S.Ct. at 1523; *Montoya*, 226 F.3d at 403-04 citing *Williams*, 120 S.Ct. at 1523. "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision.' " *Dowthitt*, 230 F.3d at 740 citing *Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt*, 230 F.3d at 741 citing *Williams*, 120 S.Ct. at 1523. The standard is one of objective reasonableness.

*Montoya*, 226 F.3d at 404 citing *Williams*, 120 S.Ct. at 1521-22. A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly ... [r]ather, that application must also be unreasonable." *Williams*, 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt*, 230 F.3d at 741. Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. *Id.* Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding. *Id.* citing 28 U.S.C. § 2254(d)(2); *Knox*, 224 F.3d at 476 citing *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.2000).

A review of the merits of each claim, in accordance with the foregoing principals of law, clearly reveals that petitioner is not entitled to relief.

### b. Claim 1 – Sufficiency of the Evidence

In his first claim for relief, petitioner contends "The State did not prove the essential elements of the crime beyond a reasonable doubt as the identity of the defendant was confused with other cases, the officer making the drug buy did not have a report, there was no photo lineup, and although testimony was there were two rocks bought only one rock weighing .13 (13 hundredths of a gram) was introduced into evidence. In court identification was made 3 ½ years later, this was the only I.D. ever made by the under cover officer whose credibility strains credulity." [rec. doc. 1, ¶12A]

This was the same claim raised as Assignment of Error No. 1 on direct review. With respect to this claim, the Third Circuit Court of Appeals addressed the merits and made the following

observations, findings, and conclusions all of which are supported by the transcript of the trial

record, as is shown more fully below–

> In his first assignment of error, the Defendant contends the State did not prove the essential elements of the crime beyond a reasonable doubt because the identity of the Defendant was confused with other cases, the officer making the drug buy did not have a report, there was no photo lineup, and although there was testimony that two rocks were bought, only one rock weighing .13 grams was introduced into evidence.

> Although the Defendant sets forth several issues regarding the evidence against him, he limits his actual argument, as well as the law set forth in his memo, to the issue of whether the evidence was sufficient to prove his identity as the person who sold drugs to Travis Ellis. Therefore, we will limit our review of the evidence to the issue of identity.

>> 'As a general matter, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. *State v. Smith*, 430 So.2d 31, 45 (La.1983); *State v. Brady*, 414 So.2d 364, 365 (La.1982); *State v. Long*, 408 So.2d 1221, 1227 (La.1982). However, positive identification by only one witness is sufficient to support a conviction. See *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988) (generally, one witness's positive identification is sufficient to support the conviction); *State v. Ford*, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847, 849-50, *writ denied*, 99-0210 (La.5/14/99), 745 So.2d 12.'

> *State v. Neal*, 00-674, p. 11 (La.6/29/01), 796 So.2d 649, 658, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).

> Detective Mark Guidry testified that on January 25, 2002, he was in charge of a series of controlled buys that were planned for the day. The controlled buys were completed by Travis Ellis, who was employed by the Port Barre Police Department, and a confidential informant (C.I.). For security purposes, Ellis and the C.I. were equipped with an audio transmission device through which a monitoring team could hear what transpired during the buy, which Detective Guidry testified was recorded for evidentiary purposes. The audio tape of the buy was played to the jury at the State's request; however, it was not introduced into evidence.[7]

> Ellis testified that on the date of the offense, he and the C.I. were riding around Opelousas when they passed a residence on Hayward Street. Ellis got out of the car at

---

[7] See rec. doc. 12, attachment, State Court Record (SCR), Vol. 2, at pp. 291-359.

the residence and attempted to buy narcotics from various people that were in standing in yards; however, no one wanted to deal with him; so, he returned to the car, and he and the C.I. continued to drive around. Ellis testified that he and the C.I. subsequently came into contact with the seller, who he described as wearing blue jeans, a white shirt, and a black knit hat. The seller put his bike in the trunk of the car and got into the backseat to discuss a possible drug transaction and to get a ride back to a residence on Hayward Street. The three men returned to the same residence at which Ellis and the C.I. had previously stopped. Once back at the residence, the seller went inside a trailer and came back out with two rocks that he subsequently sold to Ellis. Ellis testified that during the buy, the C.I. called the seller 'Leroy.' He further testified that he initially called the seller 'Leroy' and the seller responded, 'No, my name's not Leroy, it's Jeremiah.' After the sale had been completed, Ellis met with the monitoring team and turned over the suspected drugs.FN1 [Ellis testified that he met the monitoring team immediately, but then stated it could have been fifteen minutes later. He later testified that the monitoring team came by the buy location a few minutes later and met him and the C.I. at a secured location fifteen minutes after the buy.]

Ellis testified that after the drugs were turned over to the monitoring team, he drove past the residence where the buy occurred, but the seller was no longer present.FN2 [Ellis testified that the buy at issue was one of three conducted on the same day. Detective Guidry testified that the buy at issue was the second or third of the day. He later testified a buy was made after the transaction at issue.]

No photograph lineup was conducted after the buy; however, Ellis made an in-court identification of the Defendant as the seller at the trial that began on October 13, 2005. He later testified that he was positive that the Defendant was the man from whom he bought the drugs. He stated that although he had not met the Defendant prior to the buy at issue or subsequent thereto, he remembered the Defendant's face. Ellis stated that the transaction took place on January 25, 2002 between 6:00 and 7:00 p.m., when it was still daylight and that he looked at the Defendant '[f]or a minute,' and also watched him walk from the residence back to the car, where the buy took place.[8]

---

[8] See rec. doc. 12, attachment, State Court Record (SCR), Vol. 2, at pp. 371 –Vol.3, p. 396] With regard to the identification of the defendant, Officer Ellis was asked, "Are you certain that Leroy Semien, the defendant you identified in Court today, is the man that you bought the drugs from?" He replied, "I'm positive." [Id., p. 396] Elsewhere, Ellis testified that at the time of the undercover operation, he was a 7 year veteran of the Port Barre Police Department and that he had participated in 3 previous undercover operations; [id. 373]; he identified the petitioner in court as being the person known to him as Leroy Semien [id., 375]; he testified that he remembered petitioner from the day of the undercover operation [id., 376]; he testified that he remembered the operation and transaction involving petitioner "very well;" [id. 378]; he testified that petitioner sold him 2 "rocks" of crack cocaine for $40 and that he in turn gave the cocaine to officers of the Opelousas Police Department [id., 383]; thereafter, he concluded his testimony by twice asserting that he was positive that petitioner was the person who sold him cocaine during the undercover operation. [id., pp. 394-396]

Detective Guidry testified that he was familiar with the Defendant prior to the date of the buy and also made an in-court identification of the Defendant. He testified that during the buy, he could hear the names 'Leroy' and 'Jeremiah' but did not hear the name 'Leroy Semien'. He did testify, however, that the C.I. gave the name of the seller as 'Leroy'.

Detective Guidry testified that after the buy was completed, Ellis and the C.I. gave Mouton Street or Hayward Street as the area where the buy took place.FN3 [The two streets intersect.] However, he stated that no specific address was given. Once Ellis and the C.I. left the area, Detective Guidry and the monitoring team drove to the area in an attempt to locate and identify the seller. The team arrived on the scene approximately one to three minutes after the buy. Both Ellis and the C.I. had described the seller as a black male with a black hat, white shirt, and blue jeans.

Detective Guidry stated that he saw the Defendant standing in the yard next to a trailer located at 1322 Hayward Street and, as Detective Guidry stated, 'he fit the description that was given, and I knew him personally and knew his name was Leroy Semien at that time.' FN4 [Detective Guidry testified the address 1322 Hayward was posted on the mailbox or other pole in front of the residence.]

However, because the C.I. could not give the last name of the seller, Detective Guidry testified that he drove Ellis back through the area two or three minutes after the buy, and Ellis identified the residence Detective Guidry had seen the Defendant standing in front of as the residence where the buy took place. However, the Defendant was no longer there.

Detective Guidry was questioned about the identification of the Defendant as follows:

>    Q. Okay. Did you look for any other black males hanging out dressed like that?

>    A. We rode through the area and didn't see anybody else that I knew – that I knew had the name of Leroy fit that description at that time.

>    Q. You could have missed someone, couldn't you?

>    A. Possibly.

>    Q. Do you agree with that?

>    A. Yes, sir.

> Q. You've seen other people named Leroy dressed like that, I assume, huh?
>
> A. I'm pretty sure, yes. A white T - shirt and blue jeans is pretty common. That's actually a technique used by a lot of dealers to circumvent being identified. They all wear the same, pretty much, clothing description.
>
> Q. Right. And some non-dealers wear that, too,-
>
> A. Yes, too.

Detective Guidry testified that a photographic lineup was not available in this case, since the police department had no photograph of the Defendant. Although a photographic lineup was mentioned in Detective Guidry's investigation report, as well as in the affidavit of probable cause, Detective Guidry admitted there was a mistake in the affidavit.[9]

Lieutenant Donald Thompson testified that he worked on the monitoring team on the date of the offense. He testified that ten to fifteen minutes before the buy, he passed through 'that area' and saw the Defendant. During the buy, Lieutenant Thompson heard Ellis relay a description of the person from whom he had purchased drugs. According to Lieutenant Thompson, Ellis' description indicated that the subject was wearing a white shirt, a dark-colored jacket, blue jeans, and a knit cap with a bib. Lieutenant Thompson testified regarding the Defendant as follows: 'I knew what he was wearing and, of course, I knew where he lived, you know, so, you know, I knew that's who they had purchased narcotics from.' He further testified that the name 'Leroy Semien' was mentioned on the tape played to the jury. He was questioned about the tape as follows:

> Q. Detective Thompson, you just-you heard-you reviewed the tape and you just heard that played for the jury, and in that tape, were you able to discern or understand you, yourself, saying, 'Yes, I saw him a little bit earlier' or 'I just saw that guy'?
>
> A. Yes, ma'am.

Lieutenant Thompson then made an in-court identification of the Defendant and testified that the Defendant was the person he saw in the area before the buy wearing the same clothing as that described by Ellis. He also testified that he was sure the Defendant resided at 1322 Hayward Street on January 25, 2002; however, he later admitted he was not certain that was the exact address.

---

[9] See rec. doc. 12, attachment, State Court Record (SCR), Vol. 2, at pp. 291-359;

We note that Lieutenant Thompson did not write a report in this matter, nor did Detective Guidry's report contain the information regarding Lieutenant Thompson's sighting of the Defendant prior to the buy.[10]

Detective Guidry testified that the Defendant was arrested on February 13, 2002 at 1322 Hayward Street. However, during booking, the Defendant indicated he lived on Lastrapes Street, which Detective Guidry testified was the home of the Defendant's mother. Through surveillance, Detective Guidry determined that the Defendant lived with a female, who Detective Guidry thought was April Ducote. Subsequent surveillance revealed the Defendant at, or around, a trailer on the thirteen hundredth block of Hayward Street. Detective Guidry testified that, at one time, all the trailers in the trailer park had the same address with a designated letter, which changed after 9-1-1 was implemented. A search revealed that the Defendant had contacts with 1328 Hayward Street, rather than 1322 Hayward Street. Willie Mae Washington, a clerk with the water department of the City of Opelousas, testified that there was no water service at 1322 Hayward Street on February 13, 2002. Washington further testified that in 2005, April Ducote resided at 1328 Hayward Street, Lot B, which had been 1320 Hayward Street prior to 9-1-1 changes, and that services for Ducote at that address had commenced on August 26, 2002, and ceased on March 15, 2004. Washington was not asked to run the Defendant's name through the system, and she had no knowledge about whether the Defendant lived at 1328 Hayward Street prior to August 26, 2002.[11]

Sergeant Roylis Gallow arrested the Defendant at a trailer within the thirteen hundredth block of Hayward Street. In his opinion, at the time of the arrest, the Defendant had lived in the trailer between six months and a year.[12]

It is well established that the standard of review to uphold a conviction is whether any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of the crime beyond a reasonable doubt. La.Code.Crim.P. art. 821, *State v. Odom*, 03-1772 at pp. 5-6, 878 So.2d 582.

There is evidence in the record to find that the jury was reasonable in finding that the Defendant was positively identified. Travis Ellis, an employee of the Port Barre Police Department, made an in-court identification of the Defendant as the seller. We find that it is reasonable for the jury to have found that identification credible enough

---

[10]  See rec. doc. 12, attachment, State Court Record (SCR), Vol. 3, at pp. 404-410.

[11]  See rec. doc. 12, attachment, State Court Record (SCR), Vol. 2, at pp. 291-359

[12]  See rec. doc. 12, attachment, State Court Record (SCR), Vol. 3, at pp. 432-438.

to remove any reasonable doubt as to the identification of the perpetrator of the sale. Accordingly, we find there is no merit to the Defendant's first assignment of error.

*State of Louisiana v. Leroy Semien*, 2006-841 (La. App. 3 Cir. 1/31/2007), 948 So.2d 1189, 1192-95.

The appropriate standard for reviewing claims of sufficiency of the evidence is that which was set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). According to *Jackson*, the standard for review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. "The *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F .3d 190 (5th Cir. 2001) at 193 (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).

While the Third Circuit did not cite *Jackson*, it is clear from opinion that it relied upon it in deciding the sufficiency of the evidence issue. As noted above, the Court observed, "It is well established that the standard of review to uphold a conviction is whether any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of the crime beyond a reasonable doubt."

Further, each of the references to trial testimony sited by the Court are supported by the state court trial transcript. Most importantly, the testimony of Officer Ellis was clear and unequivocal on the issue of identity. Therefore, the evidence, taken in the light most favorable to the prosecution, establishes beyond any doubt that the petitioner was the perpetrator of the crime and the Court of

Appeals' determination of sufficiency of the evidence has not been shown to be unreasonable. For that reason, Claim 1 should be dismissed with prejudice.

### c. Claim 2 – Impeachment of the Confidential Informant

In Claim 2 petitioner contends that the trial court erred when it prevented the defense from introducing evidence of the confidential informant's prior convictions. More specifically, he complains that "The trial court erred when the state was allowed to show the reliability of the informant yet prevented the defense from introducing evidence to show that the informant had eight prior convictions." [rec. doc. 1, ¶12(B)] He raised this claim on direct review (although, as shown above, he did not address the claim as a violation of the Constitution or laws of the United States).

The Third Circuit analyzed the claim and denied relief as follows:

In his second assignment of error, the Defendant contends the trial court erred when it prevented the defense from introducing evidence that the C.I. had eight prior convictions, yet allowed the State to argue that the same person was 'reliable' in making cases.

During the cross-examination of Detective Guidry, defense counsel asked Detective Guidry if he would agree that the C.I. had been convicted at least eight times. The State objected, arguing the information was irrelevant. The trial court sustained the objection, and the jury was instructed to disregard the information.

Louisiana Code of Evidence Article 609.1 provides for attacking credibility by evidence of conviction, in pertinent part, as follows:

A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.

B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.

C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:

(1) When the witness has denied the conviction or denied recollection thereof;

(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or

(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.

Louisiana Code of Evidence Article 806 establishes the standard for attacking the credibility of a hearsay declarant as follows:

When a hearsay statement, or a statement defined in Article 801(D)(2)(c) or (D)(3), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, offered to attack the declarant's credibility, is not subject to any requirement that he may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine him on the statement as a witness identified with an adverse party.

The C.I. did not testify at trial. Therefore, we find article 609.1 inapplicable to the case at bar. Additionally, no statements made by the C.I. were admitted at trial. Therefore, we also find article 806 inapplicable to the case at bar.

The Defendant further argues that his right to impeach the credibility of the State's witness was impinged, and his right to present a defense was prejudiced. We do not find that the Defendant's right to present a defense was prejudiced, as he called witnesses in this matter and cross-examined those called by the State. Additionally, his right to impeach the credibility of Detective Guidry was not impinged, as he was able to cross-examine him regarding his role in the controlled buy. Furthermore, we do not find the reliability of the C.I. to be an issue in this case, as the C.I. did not testify at trial, nor did he provide police with information used in the prosecution of the Defendant. Accordingly, this assignment of error lacks merit.

*State v. Semien*, 2006- 841 (La. App. 3 Cir. 1/31/2007), 948 So.2d at 1195-96.

In his rebuttal to the State's answer, petitioner argues for the first time that the state court's evidentiary ruling violated his right to confrontation as guaranteed by the Sixth Amendment. [rec. doc. 13, pp. 33-35] In support of this claim he argued that, "The State's case rested almost entirely on identification and the C.I. would be the only way of trying to place petitioner at the transaction ... [w]ithout the state giving credibility to the informant, the state had no case." [*Id.*, p. 34]

Federal *habeas* corpus review is limited to errors of constitutional magnitude. In reviewing state court evidentiary rulings, the federal court's role "is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness" under the Due Process Clause. *Castillo v. Johnson,* 141 F.3d 218, 224 (5th Cir. 1998), citing *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir.1986) (internal quotation omitted). A federal court may grant habeas relief based on an allegedly erroneous state court evidentiary ruling only if the ruling violates a specific federal constitutional right or is so egregious such that it renders the petitioner's trial fundamentally unfair. See *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir.2000); *Castillo*, 141 F.3d at 224 (5th Cir.1998); *Brown v. Dretke*, 419 F.3d 365 (5th Cir. 2005).

Petitioner now claims that he was denied the right of confrontation guaranteed by the Sixth Amendment because "... the C.I. would be the only way of trying to place petitioner at the transaction ...", however, that assertion is simply not supported by the record. The Sixth Amendment's Confrontation Clause guarantees the right of the accused in a criminal proceeding to be confronted with the witnesses against him. *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In other words, a criminal defendant has a constitutional right to cross-examine a prosecution witness and thereby expose any information relating to the reliability of the witness. *Davis v. Alaska*, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

As noted by the Third Circuit, the C.I. did not testify nor did he provide any information used in the prosecution of the petitioner; and, petitioner had the right and opportunity to cross-examine ALL of the witnesses who testified against him. Since he did not testify and since he did not provide any information used in petitioner's prosecution, the C.I.'s credibility was not at issue. Petitioner's argument is without a basis in fact – has not demonstrated that the trial court's evidentiary ruling affected the fundamental fairness of his trial; he has not demonstrated that his right of confrontation was violated. In short, he is not entitled to federal habeas relief on this claim.

### d. Claim 3 – Excessive Sentence

In his third claim petitioner argues that the 12 year sentence was excessive for a first offender who sold such a small amount (.1 gram) of cocaine. Again, as shown above, petitioner raised this claim on appeal as a violation of Louisiana law. Nevertheless, the Third Circuit denied relief as follows:

> In his third assignment of error, the Defendant contends the twelve-year sentence imposed upon him as a first-time offender convicted of distribution of approximately 1/10th of a gram of crack is excessive.

> \*        \*        \*

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, '[m]aximum sentences are reserved for the most serious violations and the worst offenders.' *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 \*\*12
> (Cite as: 948 So.2d 1189, \*1197, 2006-841 (La.App. 3 Cir. 1/31/07), \*\*12)

La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

The fifth circuit, in [ *State v.*] *Lisotta*, [98-646 (La.App. 5 Cir. 12/16/98),] 726 So.2d [57] at 58, stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:

1. The nature of the crime,
2. The nature and background of the offender, and
3. The sentence imposed for similar crimes by the same court and other courts.

*State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958-59 first two alterations in original.

The sentencing range for distribution of cocaine is two to thirty years at hard labor, with the first two years of the sentence to be served without benefit of probation, parole, or suspension of sentence. La.R.S. 40:967(B)(4)(b). The Defendant in the instant case was sentenced to twelve years at hard labor by the trial court.

At the sentencing hearing, the trial court made the following remarks:

> Considering the input from the defendant, the Pre-Sentence Investigation, and the guidelines set forth by Louisiana Code of Criminal Procedure Article 894.1, and other applicable sentencing statutes ... the Court notes the following factors pertinent to this sentence. The defendant is a first time felony offender.... Also, the defendant was arrested for aggravated assault, as indicated by his Counsel, on July 7, 2005, where it was alleged that the defendant possessed a weapon, a gun, and he pointed it at other individuals. Accordingly, there is an undue risk that during a period of a suspended sentence or probation, the defendant would commit another crime. The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution. A lesser sentence would deprecate the seriousness of the defendant's crime. There are no mitigating circumstances and no remorse. In fact, the defendant, even at this time, indicates that certain things were or were not done and still professes, I guess, his innocence in respect to what he has indicated to the Court.

Although the Defendant is a first felony offender, we do not find the sentence imposed upon him by the trial court to be excessive. The twelve-year sentence imposed upon him is well within the thirty-year statutory limit set forth in La.R.S. 40:967(B)(4)(b). As previously discussed, the trial court is granted wide discretion in

imposing a sentence, and absent an abuse of that discretion, we will not find the sentence imposed to be excessive when the sentence imposed falls within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. The only consideration before us on review is whether the trial court abused its wide discretion, not whether another sentence would be more appropriate. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). After reviewing the record and considering the evidence, we do not find that the trial court abused its discretion in sentencing the Defendant to twelve years at hard labor for distribution of cocaine, as it is less than half of the allowable maximum sentence set forth in La.R.S. 40:967(B)(4)(b). Accordingly, we find this assignment lacks merit.

*State v. Semien*, 2006- 841 (La. App. 3 Cir. 1/31/2007), 948 So.2d at 1196 - 98.

The Court of Appeal noted that petitioner was sentenced within the range set forth by the Louisiana legislature for the offense of distribution of cocaine. As noted by the Court, the sentencing range for distribution of cocaine is from two to thirty years at hard labor, with the first two years of the sentence to be served without benefit of probation, parole, or suspension of sentence. La.R.S. 40:967(B)(4)(b).

Petitioner, as further noted by the Court, was sentenced to serve 12 years, well within the statutory limits. When a state convict has been sentenced to serve a term within statutory limits, a federal *habeas* court proceeding pursuant to 28 U.S.C. §2254 will not upset the sentence "unless it is so disproportionate to the offense as to be completely arbitrary and shocking." *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir.1975); see also *Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir.1996) (emphasizing that a federal court will not review a state sentencing without a threshold showing that the sentence is "grossly disproportionate to the offense").

The Supreme Court has recognized that "... while [the] gross disproportionality principle is applicable to sentences for terms of years..." the precise contours of the "grossly disproportionate" standard are not clear. *Lockyer v. Andrade*, 538 U.S. 63, 72-73, 123 S.Ct. 1166, 155 L.Ed.2d 144,

(2003). Moreover, the Court has noted that relief based on this principle is "applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring)).

A review of petitioner's offense – distribution of cocaine – and his criminal history – petitioner is a first offender – as compared to the sentence imposed, does not establish an exceedingly rare or extreme case that might warrant a finding of a grossly disproportionate sentence in violation of the Eighth Amendment. See *Rummel v. Estelle*, 445 U.S. 263 (1980) (mandatory life sentence imposed following defendant's third felony conviction for obtaining $120.75 by false pretenses did not constitute cruel and unusual punishment). Distribution of cocaine is a serious offense. The United States Fifth Circuit Court of Appeals concluded as much in a challenge to a life sentence given to a petitioner for the similar offense of distribution of heroin noting, "A life sentence for the crime of distribution of heroin serves substantial state interests in the same manner that state interests were served by a life sentence for recidivism in *Rummel*. The state could reasonably treat heroin distribution as a serious crime equivalent to crimes of violence. It could conclude: '... The drug seller, at every level of distribution, is at the root of the pervasive cycle of drug abuse. Measured thus by the harm it inflicts on the addict, and, through him, upon society as a whole, drug dealing in its present epidemic proportions is a grave offense of high rank.' *State v. Terrebonne*, [364 So.2d 1290, 1292 (La.1978) ], quoting *Carmona v. Ward*, [576 F.2d 405 (2nd Cir.1978) ]." See *Terrebonne v. Blackburn*, 646 F.2d 997, 1002 (5th Cir.1981).

Further, and more importantly, petitioner has not shown that the State court's resolution of the penalty issue was contrary to, or involved an unreasonable application of, clearly established

federal law, as determined by the Supreme Court of the United States.  Accordingly, his claim of excessiveness of sentence must fail.

### *Claim 4 – Juror Misconduct/Tampering*

On October 14, 2005, after the trial had been completed but before sentence was imposed, petitioner's trial counsel requested that a hearing be convened to explore a claim of jury misconduct/tampering. A transcript of that proceeding was prepared and made part of the record on appeal. [See rec. doc. 12, attachment, State Court Record (SCR), Vol. 2, at pp. 266-280].  The transcript reveals that the petitioner was present at the hearing. His attorney advised the court that following the conclusion of the trial, he spoke to Marie Green, one of the jurors, who advised him that "we talked about the case."  She explained that at some point during the proceedings, "Roylis [Gallow] talked to her about the case... " [*Id.*, p. 268] According to Ms. Green, Gallow advised that petitioner had "... a history in Port Barre..." that he had been previously arrested but had "gotten off." [*Id.*, p. 269] As a result of these allegations, counsel was directed by the court to file a formal motion to convene a hearing to determine the credibility of the allegations. [*Id.* , p. 271] He was instructed to file his motion "under seal" and the hearing that was ultimately convened on the issue was likewise placed "under seal" although it was obviously made available to the Third Circuit Court of Appeals which specifically mentioned the motion and hearing in the opinion on appeal.

As noted above, the Respondent supplemented the original record and filed a copy of the hearing transcript under seal in this court. [See Manual Attachment, 2/27/2009] As further noted counsel specifically abandoned his original claim concerning the conversation between Juror Green and Dy. Gallow in order to concentrate on another issue of alleged misconduct.

The undersigned is unable to alternatively discuss the merits of this claim since petitioner, through counsel, abandoned it and therefore presented no evidence to the trial court.

**5. Conclusion and Recommendation**

Petitioner has argued four claims for relief: (1) insufficiency of evidence of identity; (2) trial court erred when it prevented the defense from introducing evidence of the confidential informant's prior convictions; (3) excessiveness of sentence; and (4) jury misconduct/tampering. [doc. 1, ¶12 (A), (B), (C), and (D)] As shown above, Claims 2, 3, and 4 are subject to dismissal as procedurally defaulted.

Further, claims 1 and claims 2, and 3 have alternatively been examined on the merits. Under the deferential scheme of § 2254(d) the Court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Petitioner, who has the burden of proof herein, has made no such showing.

Therefore,

**IT IS RECOMMENDED** that the petition for writ of *habeas corpus* be **DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and

recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on April 17, 2009.

_____
Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)